UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DAMON MILLAR,<br><br>    Plaintiff,<br><br>    v.<br><br>BANK OF AMERICA, N.A.,<br><br>    Defendant. | Case No. 3:15-cv-03320-LB<br><br>**ORDER GRANTING THE PLAINTIFF'S MOTION TO REMAND AND DENYING THE DEFENDANT'S MOTION TO DISMISS AS MOOT**<br><br>[Re: ECF Nos. 9, 12] |

**INTRODUCTION**

Damon Millar sued his former employer, Bank of America, N.A., asserting one claim under the Private Attorneys General Act ("PAGA"), California Labor Code § 2698 *et seq.*, for civil penalties for failing to provide him and other aggrieved employees with meal and rest periods, in violation of California Labor Code §§ 226.7, 512, and 1198. (Complaint, ECF No. 1 at 13-18.[1]) Bank of America removed the case from state court, asserting diversity of citizenship as a ground for jurisdiction. (Notice of Removal, ECF No. 1.) Mr. Millar moves to remand in part on the ground that the PAGA penalties and attorney's fees cannot be aggregated and that the amount in controversy thus does not exceed $75,000. (Motion, ECF No. 12.) The court remands the case for lack of diversity jurisdiction.

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of the documents.

ORDER (No. 3:15-cv-03320-LB)

**STATEMENT**

## I. THE COMPLAINT

Mr. Millar, who resides in California, was employed by Bank of America, a multinational banking and financial services corporation headquartered in North Carolina, as an Anticipatory Personal Banker from June 2013 until March 2015. (Complaint ¶¶ 1, 6-7, 12-13.) Throughout his employment, Bank of America classified him as a non-exempt employee but did not provide him with meal periods or rest periods in violation of California Labor Code §§ 226.7, 512, and 1198. (*Id.* ¶¶ 1, 14-15, 26, 28.) In fact, he regularly worked through lunch and worked his entire shift without any breaks. (*Id.* ¶¶ 15-16.) Bank of America did not provide him with additional compensation for the missed meal and rest periods or with the accurate wage statements required by California Labor Code § 226(a). (*Id.* ¶¶ 17, 23.)

Other "Aggrieved Employees" also did not receive meal periods, rest periods, or accurate itemized wage statements. (*Id.* ¶¶ 2, 18-23.) "Aggrieved Employees" are "all current and former employees of Defendant who worked as personal bankers and against whom one or more violations of the Labor Code are alleged to have been committed during the period from April 27, 2014 (i.e. one year before the date on which Plaintiff gave notice to Defendant of the alleged violations of the Labor Code set forth in this Complaint) to the date of the final disposition of this action." (*Id.* ¶ 2.)

By letter dated April 26, 2015, Mr. Millar gave written notice via certified mail to both the Labor and Workforce Development Agency ("LWDA") and Bank of America of the specific provisions of the California Labor Code that he alleges were violated and of the facts and theories that support the alleged violations. (*Id.* ¶¶ 9, 29.) The LWDA did not provide Mr. Millar with written notice that it does not intend to investigate the alleged violations, but 33 days elapsed since the postmarked date of the letter. (*Id.* ¶¶ 10, 30.) Thus, Mr. Millar exhausted his administrative remedies. (*Id.* ¶ 30, citing Cal. Labor Code § 2699.3(a)(2).)

The complaint, which has a single PAGA claim, does not specify an amount in controversy but seeks civil penalties, restitution, pre-judgment interest, post-judgment interest, costs of the lawsuit, reasonable attorney's fees, and other just and proper relief, based on underlying violations of

ORDER (No. 3:15-cv-03320-LB)

2

California Labor Code §§ 226.7, 512, and 1198.[2] (*See id.* at ¶ 28.)

## II. THE NOTICE OF REMOVAL

In its timely notice of removal, which is supported by an accompanying declaration, Bank of America alleges that from April 27, 2014 to June 26, 2015, it "employed at least 3,505 unique individuals holding the job title of Personal Banker" who "worked a total of 69,066 pay periods, or an average of 19.70 pay periods each." (Notice of Removal, ECF No. 1, ¶ 16.) The PAGA penalty for an initial violation is $100 per pay period, which works out to a total of $1,051,500 ($100 x 3,505 employees x three Labor Code violations). (*Id.* ¶ 17.) The PAGA penalty for a subsequent violation is $200 per pay period, which works out to $39,326,100 ($200 x 18.70 pay periods x 3,505 employees x three Labor Code provisions). (*Id.* ¶ 19.) The two amounts total $40,377,600 in PAGA penalties. 25% of PAGA penalties -- $10,094,400 here -- is distributed to the "aggrieved employees" under California Labor Code § 2699(i). (*Id.* ¶ 20.)

By reference to its own fees and the Ninth Circuit's 25% common-fund benchmark, Bank of America also estimates that Mr. Millar's counsel's fees well exceed $75,000. (*Id.* ¶¶ 22 (25% benchmark is over $10M), 23 (at least $150,000 in actual fees if litigated through trial).)

## III. OTHER PROCEDURAL HISTORY

After removing the case, Bank of America moved to dismiss it for failure to plausibly allege a denial of meal-and-rest breaks and moved to strike the PAGA representative claim for lack of standing. (Motion to Dismiss, ECF No. 9.) Mr. Millar opposed the motion and timely moved to remand the case to state court. (Opposition, ECF No. 13; Motion to Remand, ECF No. 12.) The court heard oral argument on September 24, 2015. (Minute Order, ECF No. 23.)

## ANALYSIS

A defendant may remove an action to federal court based on diversity jurisdiction. 28 U.S.C. § 1441(b). The issue here is whether the amount in controversy exceeds $75,000. *See* 28 U.S.C. §

---

[2] Mr. Millar alleges that Bank of America violated four statutes (California Labor Code §§ 226(a), 226.7, 512, and 1198) but he seeks civil penalties under PAGA only for three of them (California Labor Code §§ 226.7, 512, and 1198). (*Compare* Complaint ¶¶ 20-23, 26, *with id.* ¶ 28.) Thus, when calculating the amounts relevant for removal, the court assumes, like Bank of America did, that Mr. Millar's PAGA claim is based upon three, rather than four, underlying Labor Code violations.

ORDER (No. 3:15-cv-03320-LB)        3

1332(a). "Where, as here, it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121-22 (9th Cir. 2013) (internal quotation marks and citations omitted). The court resolves all ambiguities in favor of remand. *See Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

The amount in controversy includes the damages in dispute and attorney's fees that are authorized by statute. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998).

PAGA allows private enforcement of Labor Code violations when the LWDA declines to investigate or issue a citation for an alleged Labor Code violation. Cal. Lab. Code § 2699(a); *Urbino*, 726 F.3d at 1121. "[A]n aggrieved employee may commence a civil action 'on behalf of himself or herself and other current or former employees' against his or her employer." *Urbino*, 726 F.3d at 1121 (quoting Cal. Lab. Code § 2699(a)). PAGA's civil penalties are $100 for each aggrieved employee per pay period for the initial violation and $200 per employee for each subsequent pay period. Cal. Lab. Code § 2699(f)(2). "[C]ivil penalties recovered by aggrieved employees shall be distributed as follows: 75% to the Labor and Workforce Development Agency . . . and 25% to the aggrieved employees." *Id.* § 2699(i); *see Urbino*, 726 F.3d at 1121. "Any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Cal. Lab. Code § 2699(g)(1).

It is undisputed that the statutory penalties attributable to Mr. Millar do not exceed $75,000. From Bank of America's formula, they are $300 for the initial violation ($100 x three Labor Code violations) and $11,220 for subsequent violations ($200 x three Labor Code violations x 18.70 pay periods). Bank of America nonetheless asserts that the amount in controversy is more than $75,000 because Mr. Millar is entitled to receive the 25% PAGA penalty of $10,094,400 (25% of $40,377,600). (Opposition, ECF No. 19 at 8.) Alternatively, Bank of America asserts that adding in PAGA attorney's fees establishes more than $75,000 in controversy. (*Id* at 14.)

## I. AGGREGATION OF PAGA PENALTIES

The first issue is whether the court considers only the civil penalties attributable to Mr. Millar

ORDER (No. 3:15-cv-03320-LB)

4

1   or instead considers the entire 25% penalty. The court follows the weight of authority and
2   considers only the penalties attributable to the named plaintiff, Mr. Millar.

3   In *Urbino*, the named plaintiff filed a state-court representative PAGA action, alleging that his
4   employer deprived him and other non-exempt employees of meal periods, overtime and vacation
5   wages, and accurate itemized wage statements. 726 F.3d at 1121. The penalties for the named
6   plaintiff were roughly $11,000, and the aggregated penalties were roughly $400,000 for the initial
7   violations and $9 million for the subsequent violations. *Id.* The employer removed the action to
8   federal court, alleging that the penalties could be aggregated; the district court agreed. *Id.* The
9   Ninth Circuit reversed, holding that the claims cannot be aggregated because the employees'
10  injuries are individual. *Id.* at 1122. The court rejected the employer's argument that aggregation
11  nonetheless was appropriate because the employee was asserting the state's collective interest in
12  enforcing its labor laws through PAGA. *Id.*

13  *Urbino* is dispositive. The court cannot aggregate the PAGA penalties. Bank of America
14  nonetheless argues that *Urbino* does not prevent the court from considering the 25% PAGA
15  penalty that Mr. Millar "stands to recover" individually as his "bounty." (Opposition, ECF No. 13
16  at 6, 8-12. It argues that the 25% (or roughly $10 million) is Mr. Millar's stake in the litigation.
17  (*Id.* at 9-10.) This argument does not change the outcome.

18  First, *Urbino* is directly on point. The named plaintiff brought a representative action as a sole
19  representative too. *See Urbino*, 726 F.3d at 1121; *see also Garrett v. Bank of Am.*, N.A., No. 13-
20  cv-05263-JST, 2014 WL 1648759, at *7 (N.D. Cal. Apr. 24, 2014) (observing this). And in
21  describing PAGA, the *Urbino* court "stated that '[i]f the representative plaintiff prevails, the
22  aggrieved employees are statutorily entitled to 25% of the civil penalties recovered,' drawing a
23  clear distinction between plaintiff on one hand and the employees as a group on the other."
24  *Garrett*, 2014 WL 1648759, at *7 (quoting *Urbino*, 726 F.3d at 1121).

25  Second, the plain language of PAGA provides that "civil penalties recovered by aggrieved
26  employees shall be distributed as follows: . . . 25 percent to the aggrieved employees," plural. Cal.
27  Lab. Code § 2699(i). The court follows *Garrett* and holds that the plain language of section
28  2699(i) compels the conclusion that all aggrieved employees, and not solely the representative

ORDER (No. 3:15-cv-03320-LB)

5

plaintiff, share the 25% penalties. *See* 2014 WL 1648759, at *7. Section 2699(g)(1)—which allows an aggrieved employee to "recover the civil penalty"—does not change the outcome. It "indicates how to calculate the civil penalty each employee is allowed to recover, not the amount the employee bringing the suit is allowed to recover. If the latter were the case, the statute would at least say that the plaintiff bringing the suit 'may recover the civil *penalties* described in subsection (f).'" *Id.*

Third, the weight of district-court authority applies *Urbino* and considers only the named plaintiff's PAGA penalties when determining the amount in controversy. *See Madison v. U.S. Bancorp*, No. C-14-4934-EMC, 2015 WL 355984, at *3 (N.D. Cal. Jan. 27, 2015) ("Thus, when considering the possible amount of civil penalties that could be at stake in this litigation were Madison to prevail, the only relevant penalties are those Madison herself, as the sole named plaintiff, may ultimately recover."); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1044-47 (N.D. Cal. 2014) (discussing *Urbino*); *Garrett*, 2014 WL 1648759, at *6-7; *see also Esqueda v. Sonic Auto., Inc.*, No. SACV 15-00404 JVS (DFMx), 2015 WL 1821022, at *3-5 (C.D. Cal. Apr. 22, 2015); *White v. Rite of Passage Adolescent Treatment Ctrs. and Sch., Inc.*, No. 1:13-cv-1871 LJO-BAM, 2014 WL 641083, at *3-4 (E.D. Cal. Feb. 18, 2014), report and recommendation adopted by 2014 WL 998688 (E.D. Cal. Mar. 12, 2014).

The other cases that Bank of America cites are distinguishable.

Most pre-date *Urbino* and discuss the aggregation of PAGA penalties in dicta. *See Cunningham v. Leslie's Poolmart, Inc.*, No. CV 13-2122 CAS (CWx), 2013 WL 3233211, at *6 n.1 (C.D. Cal. June 25, 2013); *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 978 n.5 (E.D. Cal. 2012); *Amaral v. Cintas Corp.*, No. 2, 163 Cal. App. 4th 1157, 1195 (2008). *Pagel v. Dairy Farmers of America, Inc.* was a case brought under the Class Action Fairness Act of 2005 ("CAFA"); there the court held that the anti-aggregation rule does not apply in CAFA actions and discussed only in dicta the "open" issue about whether a named plaintiff's PAGA penalties should be reduced by 75% when determining the amount in controversy for purposes of removal. 986 F. Supp. 2d 1151, 1154-55, 1157-58 (C.D. Cal. 2013); *cf. Patel*, 58 F. Supp. 3d at 1044-47 (no need to reduce the named plaintiff's individual penalties by 75% to account for the penalties paid to the

ORDER (No. 3:15-cv-03320-LB)   6

LWDA).

Other cases consider only the PAGA penalties relating to the named plaintiff's claims. *See Willis v. Xerox Bus. Servs., LLC*, No. 1:13-cv-01353-LJO-JLT, 2013 WL 6053831, at *2-4, *6-9 (E.D. Cal. Nov. 15, 2013).

Finally, Bank of America cites the statement in *Baumann v. Chase Inv. Servs. Corp.* that the "the twenty-five percent portion of the penalty awarded to the aggrieved employee [singular] does not reduce any other claim that the employee may have against the employer." (Opposition, ECF No. 19 at 9, quoting 747 F.3d 1117, 1123 (9th Cir. 2014).) The full excerpt is as follows:

> The nature of PAGA penalties is also markedly different than damages in Rule 23 class actions. In class actions, damages are typically restitution for wrongs done to class members. But PAGA actions instead primarily seek to vindicate the public interest in enforcement of California's labor law. The bulk of any recovery goes to the LWDA, not to aggrieved employees. And, the twenty-five percent portion of the penalty awarded to the aggrieved employee does not reduce any other claim that the employee may have against the employer . . . .

*Baumann*, 747 F.3d at 1123 (internal citations omitted). The reference to a singular employee does not supersede *Urbino*'s holding forbidding aggregation and in any event follows immediately after a statement that references recovery to "aggrieved employees." More fundamentally, it was analysis in support of a holding that PAGA was not sufficiently similar to Rule 23 to allow a district court to exercise original jurisdiction over a PAGA action under CAFA. *Id.* at 1120, 1122-23. The result was that the Ninth Circuit reversed the district court and remanded with instructions to remand the case to state court. *Id.* at 1124.

In sum, the penalties attributable to Mr. Millar total $11,520 under Bank of America's formula, are the only PAGA penalties that the court considers under *Urbino*, and do not satisfy the amount-in-controversy requirement.

## II. ATTORNEY'S FEES UNDER PAGA

The amount in controversy also includes the attorney's fees that PAGA authorizes. *See* Cal. Lab. Code § 2699(g)(1); *Galt*, 142 F.3d at 1155-56. PAGA authorizes "[a]ny employee who prevails in any action . . . to an award of reasonable attorney's fees and costs." Cal. Lab. Code § 2699(g)(1). The issue is whether the court considers only the fees allocated to Mr. Millar individually or instead considers all the fees (estimated by Bank of America conservatively at

ORDER (No. 3:15-cv-03320-LB)

7

1  $150,000 for actual fees and at an outside of 25% of a common-fund settlement) allocated to all of
2  the Aggreived Employees. The court considers only the fees allocated to Mr. Millar.
3      *Urbino* did not address the issue. District court decisions issued after *Urbino* thus have
4  considered Ninth Circuit authority on fees in class-action cases. *See*, *e.g.*, *Garrett*, 2014 WL
5  1548759, at * 8. Those decisions provide that in class actions asserting removal jurisdiction under
6  28 U.S.C. § 1332(a), the amount in controversy must be over $75,000, and "[t]o determine the
7  amount in controversy under § 1332(a), 'any potential attorneys' fees award . . . must be divided
8  among all members of the plaintiff class . . . [,]' unless the statute under which fees are sought
9  allocates fees exclusively to the named plaintiff." *Davenport v. Wendy's Co.*, No. 2:13-cv-02159-
10 GEB-KJN, 2013 WL 6859009, at *2-3 (E.D. Cal. Dec. 24, 2013) (quoting *Kanter v. Warner-
11 Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001)). In *Gibson v. Chrysler Corp.*, for example, the
12 Ninth Circuit considered a pre-CAFA class action under a California statute that authorized fees.
13 261 F.3d 927, 941-43 (9th Cir. 2001), *holding modified post-CAFA by Exxon Mobil Corp. v.
14 Allapattah Servs., Inc.*, 545 U.S. 546 (2005). Chrysler argued that all of the fees should be added
15 to the named plaintiffs' claims. The *Gibson* court rejected the argument, finding that the statute
16 allowed fees "to a successful party" and distinguishing it from a Louisiana statute that awards fees
17 to "representative parties"; the California statute requires the pro rata division of attorney's fees
18 for the purpose of determining the amount in controversy, and the Louisiana statute does not. *Id.* at
19 942-43.
20     Analogizing to the class-action context, the *Garrett* court determined that PAGA fees are
21 allowed to "'[a]ny *employee* who prevails in any action," not to the specific parties who bring the
22 action." 2014 WL 16487959, at * 8 (quoting Cal. Lab. Code § 2699(g)(1)) (italics in original). It
23 then concluded that the total fees are not allocated to the named plaintiff's claims for the purpose
24 of determining the amount in controversy. *Id.* at *9. Other courts have followed this approach:

> [C]ourts in this district have concluded, following *Urbino*, that "only the portion of attorney's fees attributable to [the named plaintiff's] claims count towards the amount in controversy." *Patel*, 2014 WL 3611096, at *14; *see also Garrett v. Bank of Am.*, N.A., No. 13-cv-05263–JST, 2014 WL 1648759, at *8 (N.D. Cal. Apr. 24, 2014). As Judge Tigar has persuasively explained, "[w]hen the rule is that claims are not aggregated . . . as it is now for PAGA actions under *Urbino*, it would seriously undermine the antiaggregation rule to allow attorney's fees to be allocated solely to a named plaintiff in determining the amount

ORDER (No. 3:15-cv-03320-LB)                                                                       8

in controversy." *Patel*, 2014 WL 3611096, at *14 (internal quotation marks, modifications, and parenthesis omitted) (citations omitted). Thus, the amount of attorneys' fees likely to be recovered in a PAGA action should be "distributed pro rata to all aggrieved employees" the named plaintiff seeks to represent. *Id.*

*Madison*, 2015 WL 355984, at *3 (footnote omitted); *see also Mitchell v. Grubhub Inc.*, No. CV 15-05465-BRO (ASx), 2015 WL 5096420, at *6-8 (C.D. Cal. Aug. 28, 2015); *Patel*, 58 F. Supp. at 1049; *Garrett*, 2014 WL 1648759, at *8-9; *Davenport*, 2013 WL 6859009, at *2-3. The court finds the reasoning in these cases to be persuasive, and Bank of America has not cited any PAGA case compelling a different conclusion.

Bank of America has the burden to show that the amount-in-controversy requirement is met. Its formula yields PAGA penalties attributable to Mr. Millar of $11,520. To exceed the $75,000 amount-in-controversy threshold, then, Mr. Millar's pro rata share of attorney's fees must exceed $63,480. Bank of America asserts that there are "at least 3,505" potential aggrieved employees for the PAGA claim. To yield a pro rata share of $63,480, the total fees for the action would have to be $222,497,400 (3,505 employees x $63,480). That result is not possible.

Bank of America nonetheless argues that under the "either viewpoint" rule, the test for determining the amount in controversy "is the pecuniary result to either party which the judgment would directly produce." (Opposition, ECF No. 19 at 15, *quoting In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001)). In support of this argument, it cites *Pagel*, 986 F.Supp. 2d at 1158. *Pagel* was a CAFA class action. *Id.* at 1152. And the court there applied the "either viewpoint" rule only after noting that the "non-aggregation rule" does not apply to CAFA class actions. *Id.* at 1159. This was critical because the "either viewpoint" rule "must yield to the non-aggregation rule." *Id.* But the "non-aggregation rule" applies to this PAGA action. *See Urbino*, 726 F.3d at 1122. The "either viewpoint" rule does not apply.

In sum, the amount in controversy does not exceed $75,000. At the least, Bank of America has not met its burden to demonstrate otherwise.

### III. MOTION TO DISMISS

Because the court grants the motion to remand, it does not reach Bank of America's motion to dismiss.

ORDER (No. 3:15-cv-03320-LB)

9

## CONCLUSION

The court grants Mr. Millar's motion to remand for lack of diversity jurisdiction on the ground that the amount in controversy does not exceed $75,000 and denies the motion to dismiss as moot. This disposes of ECF Nos. 9 and 12. The court directs the Clerk of Court to remand the action back to San Francisco Superior Court.

**IT IS SO ORDERED.**

Dated: September 29, 2015

_____
LAUREL BEELER
United States Magistrate Judge